UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SARAH FOGEL, individually and on behalf
of all others similarly situated,

                        Plaintiff,

                                                        **OPINION & ORDER**

        - against -
                                                          No. 22-CV-1867 (CS)

CREDIT CONTROL, LLC d/b/a
CREDIT CONTROL & COLLECTIONS LLC,

                        Defendant.
------------------------------------------------------------x

<u>Appearances</u>:

Christofer D. Merritt
Stein Saks, PLLC
Hackensack, New Jersey
*Counsel for Plaintiff*

Brendan H. Little
Lippes Mathias LLP
Buffalo, New York
*Counsel for Defendant*

<u>Seibel, J.</u>

        Before the Court is Defendant's motion to dismiss.  (ECF No. 17.)  For the following

reasons, the motion is GRANTED.

I.      **BACKGROUND**

        A.  **Facts**

        For purposes of the motion, the Court accepts as true the facts, but not the conclusions,

set forth in Plaintiff's Amended Complaint, (ECF No. 12 ("AC")).

        This Fair Debt Collection Practices Act ("FDCPA") dispute arises out of three debt

collection letters sent to Plaintiff Sarah Fogel on January 7, 2021, April 22, 2021, and May 6,

1

2021 by Defendant Credit Control, LLC d/b/a Credit Control & Collections, LLC.  (*See* ECF Nos. 12-1, 12-2, 12-3; AC ¶¶ 28, 31, 34.)

At some point, Plaintiff incurred a debt to non-party Bank of America, N.A. ("BoA"). (AC ¶¶ 21, 23.)  The debt was overdue and placed with Defendant, a debt collector, by BoA.  (*Id.* ¶¶ 8, 25-26.)  Subsequently, Defendant sent three letters to Plaintiff attempting to collect the debt (collectively, the "Letters").  The first was sent on January 7, 2021; provided a reference number of PRSxxxx1516; alleged a total amount due of $17,844.70; and included a "G-Notice," or validation notice, which stated

> Unless you, within 30 days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by this office.  If you notify this office in writing within the 30-day period that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you by this office.  Upon your written request within the 30-day period, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(ECF No. 12-1 at 2; AC ¶¶ 28-30.)[1]  The second was sent on April 22, 2021 and included the same reference number and total amount due of $17,844.70 but contained no G-Notice.  (AC ¶¶ 31-33; ECF No. 12-2 at 2.)  The third was sent on May 6, 2021 and contained the same total amount due of $17,844.70 and a G-Notice identical to that contained in the first letter, but included a different reference number:  PRSxxxx3246.  (AC ¶¶ 34-36; ECF No. 12-3 at 2.)

Plaintiff alleges that the conflicting information in the Letters created confusion and prevented her from responding to Defendant.  (AC ¶¶ 37-40, 43.)  Specifically, the inclusion of a different reference number in the May letter and the reissuance of the G-Notice, (*id.* ¶¶ 51),

---

[1] All citations to ECF Nos. 12-1, 12-2, and 12-3 refer to page numbers set by the Court's Electronic Case Filing ("ECF") system.

allegedly made her fear that Defendant either was attempting to "'double dip' and collect the same debt twice," (*id.* ¶ 41), was negligent in its record keeping and might not properly account for a payment, (*id.* ¶ 42), or was trying to collect two different debts, (*id.* ¶ 75) – thus preventing her from properly responding to the Letters, (*id.* ¶ 43).  Because of her reliance on the Letters, she allegedly expended time and money to mitigate future financial harm and has suffered financial and reputational detriment due to negative credit reporting, as well as emotional harm. (*Id.* ¶¶ 44-46, 56, 58, 69.)

**B.  Procedural History**

On April 20, 2022, Plaintiff filed her initial Complaint, alleging violations of 15 U.S.C. §§ 1692e[2], 1692f[3], and 1692g[4] of the FDCPA.  (ECF No. 2 ("Compl.") ¶¶ 55-71.)  Plaintiff wishes to represent a class of all persons with addresses in the State of New York to whom Defendant sent multiple collection letters attempting to collect a single debt, in which Defendant provided two separate reference numbers, during the year before or within twenty-one days after Plaintiff filed this action.  (*Id.* ¶¶ 11-12.)

On June 1, 2022, Defendant filed a pre-motion letter, requesting a pre-motion conference in advance of its motion to dismiss.  (ECF No. 9.)  The Court held that conference on June 27,

---

[2] 15 U.S.C. § 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

[3] 15 U.S.C. § 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

[4] 15 U.S.C. § 1692g requires that "[w]ithin five days after the initial communication with a consumer in connection with collection of any debt, a debt collector shall . . . send the consumer a written notice containing," among other things, "the amount of the debt; the name of the creditor to whom the debt is owed; . . . a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

2022, granted Plaintiff leave to amend her Complaint, and set a briefing schedule.  (*See* Minute

Entry dated June 27, 2022).  Plaintiff filed her AC on July 27, 2022, dropping her claim under 15

U.S.C. § 1692(g).  (*See id.* ¶¶ 70-81.)  The instant motion followed.  (ECF Nos. 17-20.)

## II.   <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[5]  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Twombly*, 550 U.S. at 555.  While Federal Rule of Civil Procedure 8 "marks a

notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . .

it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the

court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth," and then determines whether the remaining well-pleaded

factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

requires the reviewing court to draw on its judicial experience and common sense." *Id.*
"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of
misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to
relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

> When deciding a motion to dismiss, a court is entitled to consider:
>
> (1) facts alleged in the complaint and documents attached to it or incorporated in
> it by reference, (2) documents 'integral' to the complaint and relied upon in it,
> even if not attached or incorporated by reference, (3) documents or information
> contained in defendant's motion papers if plaintiff has knowledge or possession
> of the material and relied on it in framing the complaint . . . , and (5) facts of
> which judicial notice may properly be taken under Rule 201 of the Federal Rules
> of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011).  To be incorporated
by reference, the complaint must make "a clear, definite and substantial reference to the
documents." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010).  "A
document is integral to the complaint where the complaint relies heavily upon its terms and
effect.  Merely mentioning a document in the complaint will not satisfy this standard; indeed,
even offering limited quotations from the document is not enough."  *Goel v. Bunge, Ltd.*, 820
F.3d 554, 559 (2d Cir. 2016).

Plaintiff attached as exhibits to the AC copies of all three collection letters sent by
Defendant.  (*See* ECF Nos. 12-1, 12-2, 12-3.)  Because those exhibits are attached to the AC,
they may be properly considered on this motion.  *See Rios v. Pinnacle Fin. Grp., Inc.*, No. 05-
CV-10290, 2006 WL 2462899, at *2 & n.1 (S.D.N.Y. Aug. 23, 2006) (considering collection
letter attached to complaint to determine whether the plaintiff stated FDCPA claim).

Those exhibits redact certain information, including Plaintiff's address, part of the
reference number, and the account number that appears between the reference number and the

amount due, directly above the name of the creditor (BoA).  (*See* ECF Nos. 12-1, 12-2, 12-3.)
Plaintiff's original Complaint attached the April and May letters with the account number
unredacted.  (ECF No. 2-1.)  The unredacted letters show that each has the following under
"account number":  ###########0189.  (*Id.*)  Likewise, the January letter contains the same
account number.  (ECF No. 9-1.)[6]  I may consider the unredacted versions because the Letters
are integral to and relied on the AC and Plaintiff does not dispute their authenticity.  *See Kwok
Sze v. Pui-Ling Pang*, No. 15-CV-447, 2015 WL 6867134, at *3 (S.D.N.Y. Nov. 9, 2015).
Further, the full context of the Letters is necessary to evaluating their compliance with the
FDCPA.  *See Schlesinger v. Jzanus Ltd.*, No. 17-CV-3648, 2018 WL 2376302, at *2 (E.D.N.Y.
May 24, 2018) ("To determine if a collection letter violates the FDCPA, courts examine the
letter in its entirety."); *Vetrano v. CBE Grp., Inc.*, No. 15-CV-3185, 2016 WL 4083384, at *10
(E.D.N.Y. Aug. 1, 2016) (evaluating "context of the entire collection letter"); *Shami v. Nat'l
Enter. Sys.*, 914 F. Supp. 2d 353, 360 (E.D.N.Y. 2012) ("a consumer is presumed to have read a
letter in its entirety").  Plaintiff plainly has no privacy interest in the account number, which she
freely included in her original Complaint and which remains on the public docket.[7]  I can discern
no reason for the redaction of the account number in the exhibits to the AC except to conceal
from the Court the fact that it is the same on both letters.

---

[6] Defendant represented that it attached to its brief the January letter with the account number unredacted, (ECF No. 18 ("D's Mem.") at 7), but it did not do so.  Defendant had, however, provided the unredacted January letter as an attachment to its pre-motion letter, (ECF No. 9).

[7] The unredacted versions comply with Federal Rule of Civil Procedure 5.2(a), which provides that filings including financial account numbers should reveal only the last four digits.

III.     **DISCUSSION**

Plaintiff argues that the Letters were inherently deceptive, employed unfair means to collect the outstanding debt, and created confusion, thereby violating Plaintiff's rights under §§ 1692e and 1692f of the FDCPA.  (AC ¶¶ 70-81.)

A.  **FDCPA § 1692e**

Section 1692e of the FDCPA contains sixteen subsections that "provide a nonexhaustive list of practices that fall within the statute's ban," *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993), including § 1692e(2)(A), which prohibits debt collectors from making "false representation[s] of . . . the character, amount, or legal status of any debt," and § 1692e(10), "a catch-all provision that bars '[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer,'" *Altman v. J.C. Christensen & Assocs., Inc*., 786 F.3d 191, 194 (2d Cir. 2015) (alteration in original) (quoting 15 U.S.C. § 1692e(10)).  A collection letter is deceptive if it is "open to more than one reasonable interpretation, at least one of which is inaccurate," *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 173 (2d Cir. 2015); *see Beauchamp v. Fin. Recovery Servs., Inc*., No. 10-CV-4864, 2011 WL 891320, at *2 (S.D.N.Y. Mar. 14, 2011), and if it "could mislead a putative-debtor as to the nature and legal status of the underlying debt, or . . . could impede a consumer's ability to respond to or dispute collection," *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012).  This includes practices that are "contradictory, vague, or threatening."  *Id*. at 95.

Alleged violations of §§ 1692e(2) and (10) are evaluated under the least sophisticated consumer standard.  *See Beauchamp*, 2011 WL 891320, at *2 & n.18.  "The least sophisticated consumer test is an objective inquiry directed toward ensuring that the FDCPA protects all

consumers, the gullible as well as the shrewd." *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012) (*per curiam*). "The hypothetical least sophisticated consumer does not have the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer, but is neither irrational nor a dolt." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010). Consequently, this standard does not allow for unreasonable, bizarre, or idiosyncratic interpretations of collection notices, and "even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.*; *see Weber v. Comput. Credit, Inc.*, 259 F.R.D. 33, 38 (E.D.N.Y. 2009) ("It is assumed that even the least sophisticated consumer will read a debt collection letter in its entirety."). The least sophisticated consumer also has some basic familiarity with her own financial history. *Ocampo v. Client Servs., Inc.*, No. 18-CV-4326, 2019 WL 2881422, at *2 (E.D.N.Y. July 3, 2019); *see Campagna v. Client Servs., Inc.*, No. 18-CV-3039, 2019 WL 6498171, at *8 (E.D.N.Y. Dec. 3, 2019) (least sophisticated consumer "would have knowledge about a credit card account where: she has applied for said credit card; used the credit card to incur goods and/or services costing thousands of dollars; and, thereafter, falls behind on her payments to the issuing credit card lender" and "would also have knowledge of receiving subsequent dunning letters regarding the delinquencies on such a credit card account").

The least sophisticated consumer inquiry "is to be conducted with a recognition that confusion can occur in a myriad of ways, such as when a letter visually buries the required validation notice, contains logical inconsistencies, fails to explain an apparent inconsistency, or presents some combination of these (or similar) vices." *Pollard v. L. Off. of Mandy L. Spaulding*, 766 F.3d 98, 104 (1st Cir. 2014). "[B]ecause the least sophisticated consumer

standard is objective, the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law that the Court may resolve on a motion to dismiss." *Jones-Bartley v. McCabe, Weisberg & Conway, P.C.*, 59 F. Supp. 3d 617, 642 (S.D.N.Y. 2014).

Plaintiff claims that Defendant violated §§ 1692e(2)(A) and (10) by sending Plaintiff a third collection letter on May 6, 2021 that contained a different reference number from the one provided on previous collection letters and that included a G-Notice that had appeared previously in the January letter but not in the April letter, which deceptively led her to believe she owed (or at least Defendant was trying to collect) two different debts, or that Defendant was trying to collect the same debt twice.  (AC ¶¶ 37-38, 41, 47-51, 75.)

Defendant argues that the change in the reference number and the repetition of the G-Notice are not deceptive because the Letters consistently complied with the information requirements listed in § 1692g(a), including "(1) the amount of the debt; [and] (2) the name of the creditor to whom the debt is owed," *see* 15 U.S.C. § 1692g(a), and consistently referenced the same debt amount, creditor and account number, which would be more than enough for an unsophisticated consumer to understand that the Letters referred to the same debt.  (D's Mem. at 5-6.)  I agree.

"A majority of courts . . . have concluded that sequential dunning letters, as are at issue in this case, do not, standing alone, violate § 1692e."  *Medina v. LTD Fin. Servs., L.P.*, No. 19-CV-3253, 2020 WL 4207671, at *3 (S.D. Tex. June 30, 2020).  While one of the Letters here bore a different reference number than the other two, even the least sophisticated consumer would know they were referring to the same debt.  The Letters consistently specified the same creditor,

account number and balance owed, (*see* ECF Nos. 2-1, 9-1, 12-1, 12-2, 12-3),[8] thereby clearly identifying the same single debt Plaintiff had incurred, *see Scott v. Nationwide Credit, Inc.*, No. 21-CV-1670, 2021 WL 166711, at *3 (S.D. Ind. Jan. 19, 2021) ("Assigning different internal account numbers to two collection letters seeking to collect an identical debt is neither deceptive nor misleading.").  It is inconceivable that Plaintiff, or any least sophisticated consumer, would believe – or think that Defendant believed – that she had incurred two different debts of $17,844.70 on the same BoA credit card account.[9]  Nor would the least sophisticated consumer be prevented from making payments on or disputing the debt due to the use of two different internal reference numbers.  *See, e.g.*, *id.* at *3 ("[O]ther district courts . . . have concluded a consumer could not plausibly allege confusion from a collection letter based on a debt collector's internal reference number when the letter otherwise clearly indicated the debt was the same."); *Himes v. Client Servs. Inc.*, 990 F. Supp. 2d 59, 64-65 (D.N.H. 2014) (two different internal reference numbers on collection letters presented "no cause for confusion" or "hint of misrepresentation or an attempt by the defendants to collect a sum that [plaintiff] did not legally owe"); *Lorandeau v. Cap. Collection Serv.*, No. 10-CV-3897, 2011 WL 4018248, at *8 (E.D. Pa. Sept. 8, 2011) (use of new internal file number was not misleading or confusing where "[t]he least sophisticated debtor could have determined from the [second collection] notice that it

---

[8] Despite having redacted the account numbers from the exhibits to the AC, Plaintiff does not dispute that all three Letters contained the same account number.  Although she does not address at all Defendant's argument that the letters were not misleading because they specified the same BoA account number, she concedes that "the only thing to change between the letters at issue was the reference number."  (ECF No. 19 at 6.)

[9] I would reach the same conclusion even without considering that all three Letters referred to the same account number.  Even the least sophisticated consumer, with rudimentary understanding of her own financial history, would not think she had incurred exactly $17,844.70 in unpaid debt on two different BoA credit cards.

referred to the same debt as the [first] notice").  Therefore, the use of different reference numbers was not false, deceptive, or misleading under § 1692e.

As to the G-Notice, district courts across the country have rejected the claim that sending multiple letters with validation notices violates § 1692e.  *See, e.g.*, *Rosen v. LJ Ross Assocs., Inc.*, No. 19-CV-5516, 2020 WL 1332145, at *5 (E.D.N.Y. Mar. 23, 2020) ("A debt collector's issuance of a second debt collection letter with a second validation notice does not overshadow the original validation notice nor would it confuse the [least sophisticated consumer].  Instead, it grants the consumer additional time to dispute the debt, which the debt collector is permitted to do."); *Ortiz v. Enhanced Recovery Co., LLC*, No. 18-CV-1347, 2019 WL 2410081, at *3 (N.D. Tex. June 6, 2019) ("[A] debt collector does not violate the FDCPA by sending two debt collection letters with 30-day validation notices more than 30 days apart"); *McCray v. Deitsch & Wright, P.A.*, 343 F. Supp. 3d 1209, 1218 (M.D. Fla. 2018) ("Both Collection Notices provided the required statutory FDCPA disclosures and did not diminish Plaintiff's rights to dispute the debt."); *Curry v. AR Res., Inc.*, No. 16-CV-517, 2016 WL 8674254, at *3 (D.N.J. Nov. 4, 2016) ("[A] second 30-day validation notice sent by a debt collector only enlarges a debtor's rights and does not violate the FDCPA."); *Bridges v. Performant Recovery*, *Inc.*, No. 15-CV-38, 2015 WL 8773340, at *3 (M.D. Ga. Dec. 14, 2015) ("[T]he Second Letter does not overshadow the 30-day period; in fact, it only extended Plaintiff's time to assert his rights and is therefore not a violation of the FDCPA.").  As Chief Judge Swain has explained:

> The initial letter accurately notified Plaintiff that she had thirty days from receipt of that letter in which to request validation.  The second letter also described the validation period and related rights accurately.  It did nothing to suggest diminution of the initial period; if anything, it re-started the period, thereby effectively extending Plaintiff's opportunity to seek validation of the debt. Nothing in the FDCPA prohibits a debt collector from giving a debtor more than the requisite 30–day validation period, and there is no evidence that Defendant took any action violative of Plaintiff's validation rights – such as by seeking to

11

collect the debt before fulfillment of a request for debt verification – before or
after delivery of the notices.

*Brenker v. Creditors Interchange, Inc.*, No. 03-CV-6500, 2004 WL 594502, at *2 (S.D.N.Y.

Mar. 25, 2004).  Multiple validation notices across multiple letters can be confusing or deceptive

when the subsequent notice contradicts the initial notice, *see Rosen*, 2020 WL 1332145, at *5

(collecting cases), but here the two notices are identical.

Finally, Plaintiff's alleged belief that Defendant may have been trying to "double dip,"

(AC ¶ 41), "is unrealistic and can be disregarded," *Scott*, 2021 WL 166711, at *3.  Defendant's

subjective intent is irrelevant to whether or not its actions are deceptive, *see Easterling*, 692 F.3d

at 234; *Sims v. GC Servs. L.P.*, 445 F.3d 959, 964 (7th Cir. 2006), so even if Defendant

purposely changed the reference number and added the G-Notice in the May letter to trick

Plaintiff into paying for the same debt twice – a theory for which there are no plausible

supporting factual allegations – the actual content of the Letters would still have to be deceptive

for Defendant to have violated § 1692e.  As discussed previously, nothing in the Letters would

have caused even the least sophisticated consumer to be confused as to the character, amount, or

status of the debt.  No reasonable consumer, even if wholly unsophisticated – let alone one with

basic knowledge of her financial affairs – would think that a debt collector referring to the same

creditor, account number and specific dollar figure was trying to deceive her into thinking she

had incurred two identical debts.  Therefore, Plaintiff has failed to state a plausible claim for

violation of § 1692e.

## B.  **FDCPA § 1692f**

Section 1692f prohibits debt collectors from using "unfair or unconscionable means to

collect or attempt to collect any debt," 15 U.S.C. § 1692f, and "was enacted specifically to catch

conduct not otherwise covered by the FDCPA, because Congress was cognizant that it could not

anticipate every improper practice used by debt collectors," *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 530 (S.D.N.Y. 2013). "Like its counterpart, section 1692e, section 1692f contains a non-exhaustive list of unfair practices." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017). "The least sophisticated consumer standard is used to determine whether a practice is unfair or unconscionable." *Id.* "[U]nconscionable, in this context, means [s]hockingly unjust or unfair, or affronting the sense of justice, decency, or reasonableness." *Gallego v. Northland Grp., Inc.*, 814 F.3d 123, 127-28 (2d Cir. 2016) (alteration in original).

Courts in this Circuit dismiss claims under § 1692f that rely on the same alleged misconduct alleged to violate other provisions of the FDCPA. *See Sussman v. I.C. Sys. Inc.*, 928 F. Supp. 2d 784, 797 (S.D.N.Y. 2013) ("Plaintiff's Complaint is deficient because his allegations fail to identify and misconduct beyond that which Plaintiff asserts violates other provisions of the FDCPA."); *DeWolf v. Samaritan Hosp.*, No. 17-CV-0277, 2018 WL 3862679, at *5 (N.D.N.Y. Aug. 14, 2018) (where plaintiff did not specify which alleged misconduct violated § 1692f, and any potential allegations were covered by other FDCPA provisions, court dismissed claim under § 1692f); *Lautman v. 2800 Coyle St. Owners Corp.*, No. 14-CV-1868, 2014 WL 4843947, at *12 (E.D.N.Y. Sept. 26, 2014) ("To the extent that plaintiff's claims under § 1692f rely on the same alleged litigation misconduct raised under § 1692e, those claims must be dismissed for the reasons stated above.").

Here, Plaintiff relies on the same alleged misconduct underlying her § 1692e claim – Defendant's "confusing" Letters – as the basis of her § 1692f claim. (*See* AC ¶ 80 ("Defendant violated § 1692f by employing unfair means to collect the subject debt from Plaintiff. Specifically, it was unfair for Defendant . . . to send collection letters structured in a way to

13

confuse Plaintiff as to [her] rights under the FDCPA and the nature of [her] alleged liability on the subject debts(s).").  Therefore, her § 1692f claim fails.

Even if that claim were not duplicative, Defendant's conduct was not unfair or unconscionable so as to constitute a violation of § 1692f.  "The phrase 'unfair or unconscionable' is as vague as they come," *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007), but "[t]he plain meaning of 'unfair' is 'marked by injustice, partiality, or deception,'" *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 (11th Cir. 2010) (quoting *Unfair*, Merriam-Webster Online Dictionary (Feb. 11, 2010), http://www.merriam-webster.com/dictionary/unfair)), and "[t]he term 'unconscionable' means 'having no conscience'; 'unscrupulous'; 'showing no regard for conscience'; 'affronting the sense of justice, decency, or reasonableness,'" *id*. (quoting Black's Law Dictionary 1526 (7th ed. 1999)).

Plaintiff does not allege any of the specific violations listed in subsections (1) through (8) of § 1692f, nor does the conduct she describes – sending a letter with a different reference number and a renewed G-Notice – rise to the level of an "unfair or unconscionable" act.  *See e.g.*, *Scott*., 2021 WL 166711, at *4 ("The allegation that the collection letters contained different internal account numbers cannot be viewed as stating a claim that [defendant] engaged in 'unfair or unconscionable' conduct."); *White v. Resurgent Capital Servs. L.P.*, No. 21-CV-1257, 2023 WL 2631865, at *7-8 (S.D. Ill. Mar. 24, 2023) (dismissing claims under §§ 1692e and 1692f where plaintiff alleged subsequent letter with a second validation notice was false, misleading, and/or unfair, because "a second validation notice, sent after the thirty-day period following the first validation notice expired, neither confuses the consumer, discourages the consumer from exercising his statutory right to dispute the validity of the debt within the thirty-day period, nor constitutes a false or misleading representation in connection with the collection of the debt").

Therefore, Plaintiff's § 1692f claim is dismissed.

**C.  Leave to Amend**

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to

amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally

granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments

previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*,

514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended, after having the benefit of a pre-motion letter from

Defendant, (*see* ECF No. 9), and the discussion at the June 27, 2022 pre-motion conference, (*see*

Minute Entry dated June 27, 2022).  In general, a plaintiff's failure to fix deficiencies in the

previous pleading, after being provided notice of them, is alone sufficient ground to deny leave

to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58

(2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first

amended, he clearly has no right to a second amendment even if the proposed second amended

complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow

itself to be imposed upon by the presentation of theories seriatim."); *In re Eaton Vance Mut.*

*Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because

"the plaintiffs have had two opportunities to cure the defects in their complaints, including a

procedure through which the plaintiffs were provided notice of defects in the Consolidated

Amended Complaint by the defendants and given a chance to amend their Consolidated

Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that

would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d

110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.").

Further, Plaintiff has not asked to amend again or otherwise suggested that she is in possession of facts that would cure the deficiencies identified in this ruling.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Olsen v. Sherry Netherland, Inc.*, No. 20-CV-103, 2022 WL 4592999, at *15 (S.D.N.Y. Sept. 30, 2022) (denying leave to amend where plaintiff did not "explain how any amendment would cure the deficiencies identified by the Court").  Indeed, because "[t]he problem[s] with [Plaintiffs'] causes of action [are] substantive," and "better pleading will not cure [them]," *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000), amendment here would be futile, *see Boswell v. Bimbo Bakeries USA, Inc.*, 570 F. Supp. 3d 89, 97 (S.D.N.Y. 2021); *Roundtree v. N.Y.C.*, No. 19-CV-2475, 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (collecting cases); *Trombetta v. Novocin*, 414 F. Supp. 3d 625, 634 (S.D.N.Y. 2019).

Accordingly, the Court declines to grant Plaintiff leave to amend *sua sponte*.

## I.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 17), and close the case.

**SO ORDERED.**

Dated:  May 31, 2023
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.